| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|
| COUNTY OF ORANGE | SUPERIOR COURT DIVISION |

| | | |
|---|---|---|
| HANNAH M. BALICKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLIANT |
| | ) | Jury Trial Demanded |
| THE UNIVERSITY OF NORTH | ) | (COMP) |
| CAROLINA AT CHAPEL HILL, | ) | |
| UNIVERSITY OF NORTH CAROLINA | ) | |
| SCHOOL OF MEDICINE, | ) | |
| UNIVERSITY OF NORTH CAROLINA | ) | |
| HOSPITALS AT CHAPEL HILL, | ) | |
| UNIVERSITY OF NORTH CAROLINA | ) | |
| HEALTH CARE SYSTEM, | ) | |
| KATIE HANLON, HEIDI WESCHLER | ) | |
| | ) | |
| Defendants. | ) | |

**NOW COMES**, the Plaintiff, Hannah Balicki, by and through their undersigned Attorney for its claims against Defendants, alleges and says:

## PARTIES AND JURISDICTION

1. Plaintiff, Hannah M. Balicki, is a citizen and resident of Grand Traverse County, Michigan.

2. Defendant, the University of North Carolina at Chapel Hill (the "University" or "UNC") was and is a public research university operated by the State of North Carolina and is a part of the UNC System and network of facilities of higher education with its principal place of business in Chapel Hill, Orange County, North Carolina. As such, the University is a "constituent institution" of the UNC System. N.C. Gen. Stat. § 116-2(4).

3. Defendant, the University of North Carolina School of Medicine (hereinafter UNCSOM) is the School of Medicine operating within and under Defendant UNC.

4. Defendant, the University of North Carolina Hospitals at Chapel Hill (UNC-Hospitals) is an academic medical center and quaternary care hospital located in Orange County, North Carolina. UNC-Hospitals is a component unit of the University of North Carolina Health Care System, N.C.G.S. § 116-350.

5. Defendant, the University of North Carolina Health Care System (hereinafter UNC-Health) is an integrated health care system owned by the State of North Carolina and established by state law, N.C.G.S § 116-37. UNC-Health's principal place of business is Chapel Hill, North Carolina.

6. UNC, UNCSOM, UNC-Hospitals and UNC-Health are hereby collectively referred to as "Organizational Defendants" throughout this Compliant.

7. At all times relevant, Katie Hanlon (hereinafter "Defendant Hanlon") served as Physician Assistant Program Director at the UNCSOM as well as a Critical Care Physician Assistant with University of North Carolina Health System.

8. At all times relevant, Heidi Weschler (hereinafter "Defendant Weschler") served as a Privacy Program Manager with UNC Health Care System.

9. Plaintiff as part of this Complaint seeks Judicial Review consistent with N.C.G.S. § 150B-45. The final decision in this matter was issued on March 31, 2025.

10. At this point, Plaintiff has exhausted all administrative remedies available to her as it relates to the Defendants and their internal processes.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. Hannah Balicki, matriculated at the University of North Carolina of Chapel Hill in the Physician Assistant program in January of 2022.

12. Throughout her program, Hannah had many professors including one who was pregnant and due to give birth in July of 2023 which for purposes of this Complaint is hereby identified as "Professor 1".

13. Prior to going out on leave a baby shower was held for Professor 1 which was attended by several Physician Assistant Students, including Plaintiff.

14. On July 5, 2023, Professor 1 indicated to Plaintiff and other students that the 5th would be her last day and that the following day she was scheduled for a planned delivery of her child.

15. On July 6, 2023, another student mentioned to Plaintiff that she believed Professor 1 was present in the hospital for her scheduled delivery.

16. On July 6, 2023, Plaintiff accessed Professor 1's medical records briefly to confirm Professor 1's presence at the hospital for her scheduled delivery, prior to sending a message to Professor 1 thanking them for their support and sending them god wishes for a delivery that was previously discussed.

17. Subsequent to the Professor 1's child's birth, on July 14, 2023, Plaintiff and Professor 1 exchanged text messages, initiated by Professor 1 thanking Plaintiff for her gift of a baby outfit and sharing a picture of her newborn child.

18. After the birth of the child, when Professor 1 mentioned to Defendant Katie Hanlon that she had received a message from Plaintiff, Defendant Hanlon grew suspicious and initiated an investigation with the UNC Health Privacy Office.

19. Upon information and belief, at some point between July 6, 2023 and August 14, 2023, the UNC Health Privacy Office was contacted and initiated an investigation which involved an access audit an interview with Plaintiff and leadership representatives from the UNCSOM.

20. The UNC Health Privacy Office investigation was conduct by Defendant Heidi Weschler.

21. At no point did the UNC Health Privacy Office share with Plaintiff the access audit in any way.

22. At no point, when accessing Professor 1's medical record, did the Plaintiff do anything more than confirm Professor 1's presence at the hospital.

23. On August 13, 2023, Plaintiff received an email, from Professor Memory Dossenbach, requesting a meeting on the following pretense, "I hope you have had a restful break. I am reaching out because we have had a few minor administrative issues arise related to SCPEs."

24. On August 14, 2023, Plaintiff and Defendant Weschler met as part of the UNC Privacy Office Investigation.

25. Defendant Weschler claimed in her conversation with Plaintiff on August 14, 2023 that Plaintiff had accessed Professor 1's medical record from 9:47 am to 9:52 am.

26. To date, at no point, has Defendant UNC-Health, UNC Privacy Office nor Defendant Weschler provided a redacted or un-redacted copy of the access audit on which Defendant Weschler based her findings and ultimately Plaintiff's dismissal was based to Plaintiff, UNC of UNCSOM.

27. Upon information and belief, UNC Privacy Office has provided redacted access audits to students facing similar accusations in cases prior to and after Defendant Weschler's report dated August 16, 2023.

28. Defendant Weschler with the UNC Privacy Office provided a memorandum dated August 16, 2023, to Defendant Katie Hanlon detailing her investigation and findings. (See attached Exhibit 1, UNC Health Privacy).

29. Defendant Weschler purportedly used UNC Health Privacy Policies and specifically Sanctions Matrix in reaching her determination of the appropriate sanction recommendations to the UNCSOM. (See attached Exhibit 2 Matrix).

30. In her analysis Defendant Weschler fails to determine what level of snooping occurred in the incident in question.

31. On August 28, 2023, Plaintiff met with the Academic Excellence Committee with the UNCSOM where she was informed of her dismissal from the program which later confirmed in writing. (See attached letter from the Academic Excellence Committee attached hereto as Exhibit 3).

32. On September 17, 2023, an appeal of the Academic Excellence Committee is filed. (See attached Plaintiff Appeal of the decision of the Academic Excellence Committee attached hereto as Exhibit 4).

33. On October 24, 2023, Plaintiff has an in-person meeting with the appeal committee.

34. On December 13, 2023, Plaintiff's appeal of the decision of the Academic Excellence Committee was denied. (See attached Appeal Decision attached hereto as Exhibit 5).

35. On November 2, 2023, Plaintiff was charged with a violation of the UNC Honor Code for the same conduct for which she was dismissed from the PA program. (See attached Honor Court charge attached hereto as Exhibit 6).

36. The Honor Court matter was inexplicably not heard until August 20, 2024, wherein Plaintiff was file found guilty of violating the Honor Code. (See attached Honor Court outcome attached hereto as Exhibit 7).

37. In September, 2024, Appellant appealed the decision of the Honor Court to the University Hearings Board. (See attached Plaintiff's UHB Appeal attached hereto as Exhibit 8).

38. On March 31, 2025, Vice Chancellor, Amy Johnson dismissed the Honor Court matter against Plaintiff. (See attached 3.31.25 Letter from VC Johnson attached hereto as Exhibit 7).

## DAMAGES TO PLAINTIFF BALICKI

39. Plaintiff has experienced considerable harms from Defendants and their processes.

40. Professionally, Plaintiff's reputation and earning potential has been irrevocably tarnished.

41. Plaintiff has suffered lost earnings and benefits while waiting on Defendants protracted appeals process that was repeatedly delayed, and which was tremendously damaging to her present and future financial health.

42. Plaintiff's dismissal from the PA school occurred in her final semester and thereby just before graduating causing considerable financial loss.

43. Plaintiff has also suffered from extreme stress, anxiety, sleeplessness, and damage to her overall wellbeing. Plaintiff will never be the same following this deeply unfair and prolonged case.

## FIRST CLAIM FOR RELIEF – VIOLATIN OF 42 U.S.C. § 1983 – DENIAL OF DUE PROCESS AND CONSPIRACY
### (Against All Defendant)

44. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

45. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

46. Organizational Defendants are public entities that receive large amount of state and federal funding and is therefore subject to the Fourteenth Amendment. In addition, all organizational Defendants, and the Individual Defendants, are state actors, are therefore bound by the requirements of the United States Constitution.

47. Organizational Defendants as public institutions established by the State of North Carolina as well as the Individual Defendants, as agents of the University and other organizations; and individually, have a duty to provide employees and students equal protection and due process of law by and through any and all policies and procedures set forth by their respective Organizations and the Constitution of the State of North Carolina.

48. Fourteenth Amendment due process protections are required in higher educational disciplinary proceedings. At a minimum, the Supreme Court has made clear that there are two basic due process requirements: (1) notice; and (2) an opportunity to be heard.

49. Where a student at a public university faces dismissal through a disciplinary proceeding, a serious property interest is at stake; a dismissal will have a lasting negative impact on the individual's life, so heightened due process protections including a hearing, with the right to present evidence, cross-examine adversarial witnesses, and to call witnesses are required.

50. Plaintiff, as a student at UNC, faced disciplinary action that included the possibility of dismissal. Accordingly, the Due Process provisions of the Fourteenth Amendment applied to the disciplinary processes utilized in Plaintiff's case, and Plaintiff was entitled to a process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussions she was facing.

51. It is well established that a person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

52. It is also well established that a person has a protected property interest in pursuing and continuing education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

53. As the Supreme Court has eluded the ultimate question of whether there is a protected interest in continued studies at a public university level, the critical inquiry undertaken by the Fourth Circuit in such cases focuses on whether the procedural processes adopted by the university conformed to due process standards.

54. There is no question that the University failed to afford Plaintiff the minimum procedural safeguards required by due process, before dismissal.

55. There also is no question that Plaintiff possessed both a constitutionally protected property and liberty interest.

56. Plaintiff's constitutionally protected property interest in his continued enrollment at UNC, and her right to be free from an arbitrary dismissal, derives from the policies, courses of conduct, practices and understandings established by UNC and the other organizational Defendants, as well as the express and implied contractual relationship between UNC the other organizational Defendants and the Plaintiff.

57. By their very nature, the applicable University and other organizational Defendants' conduct policies and procedures create an student right to continued enrollment and the right to be free from arbitrary and capricious decision making and sanctions, as the University and other organizational Defendants does not unlawfully discriminate in offering equal access and that the University recognizes the rights of all members of the University community to learn and work in an environment that is free from Discrimination and Harassment.

58. Furthermore, UNC and other organizational Defendants have delegated the authority to its individual organization to determine the policies with which it will ensure Due Process is complied with which resulted in the creation of the various policies in place in the matter *sub judice*.

59. Furthermore, these policies ensure every student has a right to Due Process.

60. In consideration of the foregoing assurances, UNC and the other organizational Defendants' policies created a property right in Plaintiff's continued enrollment with the University, and a contractual right to protection against an arbitrary dismissal.

61. Plaintiff further has a constitutionally protected liberty interest because the allegations brought against Plaintiff ultimately resulted in a dismissal from University of North Carolina at Chapel Hill, a sanction that will have significant and lifelong ramifications with respect to her education, employment, and reputation.

62. Plaintiff was wrongfully dismissed from her program of study for a momentary lapse in judgment to confirm information already known to her.

63. Thus, unless overturned, Plaintiff's dismissal will remain a part of Plaintiff's permanent record and the stigmatizing label associated with the finding will impair her ability to seek further education, employment and related employment opportunities. Absent the relief sought through this matter, other individuals will inevitably come to learn of Plaintiff's wrongful dismissal.

64. Throughout the investigation and adjudication of the charges against Plaintiff, Defendants, individually and in concert, conspired to violate Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment when they deprived her of the minimal requirements of procedural fairness, proper notice, and a meaningful opportunity to be heard.

65. Plaintiff's Due Process rights were violated in several ways, including but not limited to

> Insufficient notice of the allegations against her;
> Failure to provide the audit trail of her alleged actions; and
> Plaintiff was never able to cross-examine any of his accusers.

66. Section 1983 of Title 42 of the U.S. Code provides in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

67. The Individual Defendants, as well as other agents, representatives, and employees of the Organizational Defendants acted under color of state law when they showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

68. Plaintiff seeks to hold the Individual Defendants liable in their individual capacities because they knowingly violated Plaintiff's clearly established constitutional rights, as well as UNC and other Organizational Defendants' policies, when they took actions that led to her dismissal from the University, without affording Plaintiff proper notice and an opportunity to be heard.

69. Defendant Weschler knowingly violated Plaintiff's clearly established rights to notice, a meaningful opportunity to be heard, and the right to cross-examine witnesses.

70. As the Privacy Officer involved Defendant Weschler engaged in further violations of Plaintiff's clearly established rights, through her ratification and/or approval of the actions committed by those under her supervision, including her investigation.

71. Without regard for Plaintiff's due process rights, the Defendants individually and collectively engaged in investigatory and adjudicatory processes that resulted in the improper dismissal of the Plaintiff.

72. As fully detailed above, the unlawful actions taken by the Individual Defendants, acting in their individual capacities, were motivated by a malicious motive or intent or, at the very least, reckless, or callous indifference to Plaintiff's right to due process, warranting an award of punitive damages to Plaintiff.

73. As a result of these due process violations, Plaintiff continues to suffer substantial injury, damage, and loss, including, but not limited to, loss of future career opportunities, reputational damage, economic injuries, and other direct and consequential damages.

74. As a result of the foregoing, Plaintiff is entitled to prospective relief against Defendants, and compensatory and punitive damages against the Individual Defendants acting in their individual capacities in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## SECOND CLAIM FOR RELIEF - BREACH OF CONTRACT
### (Against Organizational Defendants)

75. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

76. At all times relevant hereto, a contractual relationship existed between UNC the Organizational Defendants and the Plaintiff by virtue of Plaintiff's enrollment at UNC and as defined by and through UNC's and Organizational Defendants policies and procedures governing students.

77. Through these policies, UNC and Organizational Defendants provided specific, enforceable provisions outlining certain procedures that were to be followed by the Defendants before Plaintiff could be disciplined or dismissed.

78. Any failure to follow promised procedures in the disciplinary process would therefore constitute a violation of the Defendants' contract with its students.

79. Accordingly, through the documents it publishes and provides to students, UNC and the Organizational Defendants make express and implied contractual commitments to students involved in the disciplinary process and/or the investigation of potential violations of the policies.

80. Under North Carolina law, the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.

81. Based on the aforementioned facts and circumstances, UNC and the Organizational Defendants created express and implied contracts when it offered, and Plaintiff accepted, employment at UNC, and when Plaintiff performed for UNC.

82. UNC and Organizational Defendants committed several breaches of its agreements with Plaintiff during the investigation and adjudication processes including but not limited to the following:

**Deprivation of Plaintiff's right to evidence and cross-examine her accusers**

83. At no time in the aforementioned processes was Plaintiff allowed to pose any questions to her accusers and upon information and belief, UNC and Organizational Defendants refused to provide the medical record audit trail upon which her dismissal was based despite giving audit trails to other accused students in similar cases.

84. Plaintiff was thus deprived of her right to question the other party, in direct violation of the applicable policy and due process.

85. In addition to the violations delineated above, UNC violated the covenant of good faith and fair dealing by failing to afford Plaintiff the fair, thorough, and impartial investigation processes to which she was entitled, resulting in an erroneous outcome and the final severe sanction of dismissal.

86. North Carolina courts recognize an implied covenant of good faith and fair dealing in every contract, which mandates that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

87. Each of the foregoing breaches contributed to a process that deprived Plaintiff of her fundamental and contractually guaranteed rights, ultimately leading to adverse and erroneous findings against Plaintiff.

88. As a proximate and foreseeable consequence of the foregoing breaches, Plaintiff sustained damages, including, but not limited to, emotional distress, psychological damages, loss of education, loss of future career opportunities, reputational damage, economic injuries, and other direct and consequential damages.

89. As a result of the foregoing, Plaintiff is entitled to damages in excess of $25,000 in an amount to be determined at trial, plus prejudgment interest, attorneys' fees expenses, costs and disbursements.

### THIRD CLAIM FOR RELIEF – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against the Individual Defendants)

90. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

91. Defendants Weschler and Hanlon each carried out their duties with respect to the cases against Plaintiff in a negligent manner when, either acting individually or in concert, they permitted

the reporting parties to weaponize UNC's processes against Plaintiff, engaged in decision-making calculated to lead to the predetermined conclusion that Plaintiff was responsible and must be punished severely, failed to ensure that the investigatory and adjudicatory processes were fair and objective, and instead contributed to the defective, prejudicial, and arbitrarily inequitable processes that were replete with bias against Plaintiff.

92. By way of example but not limitation, Defendants: (i) presumed Plaintiff responsible; (ii) deprived her of proper notice of the allegations; (iii) failed to disclose critical and exculpatory information at various junctures; (iv) conducted investigations skewed in favor of the complainants and designed to reach predetermined findings of responsibility; and (v) deprived Plaintiff of the opportunity to cross-examine her accusers.

93. In combination with conduct described above, the Defendants' actions evinced a malicious and corrupt intent and a pattern of extreme and outrageous behavior pursued with the intent to cause Plaintiff to suffer severe emotional distress.

94. Plaintiff has in fact suffered severe emotional distress as a proximate result of Defendants' actions. It was reasonably foreseeable that such negligent acts would result in severe emotional distress to Plaintiff, given the several year-long process that forced her to continuously defend herself, attempt to prove her innocence, face administrators that were not unbiased but instead presumed her to be responsible from the beginning and, despite all of his efforts, ultimately resulted in her being dismissed from the program, ostracized from her collogues, removed from her esteemed position, and suffering from irreparable harm to her reputation.

95. Defendants' conduct will continue to cause harm to Plaintiff given the irreparable harm to her reputation, the interruption in his education, and the lifelong consequences that flow therefrom.

96. It was reasonably foreseeable that Plaintiff would suffer emotional and psychological harm as a result of Defendants' conduct.

97. As a direct and foreseeable consequence of the foregoing conduct, Plaintiff has suffered, and will continue to suffer considerable emotional and psychological harm.

### FOURTH CLAIM FOR RELIEF – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against the Individual Defendants)

98. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

99. Defendants Weschler and Hanlon each carried out their duties with respect to the cases against Plaintiff in a negligent manner when, either acting individually or in concert, they permitted the reporting parties to weaponize UNC's processes against Plaintiff, engaged in decision-making calculated to lead to the predetermined conclusion that Plaintiff was responsible and must be punished severely, failed to ensure that the investigatory and adjudicatory processes were fair and objective, and instead contributed to the defective, prejudicial, and arbitrarily inequitable processes that were replete with gender bias against Plaintiff.

100. By way of example but not limitation, Defendants: (i) presumed Plaintiff responsible; (ii) deprived her of proper notice of the allegations; (iii) failed to disclose critical and exculpatory information at various junctures; (iv) conducted investigations skewed in favor of the complainants and designed to reach predetermined findings of responsibility; and (v) deprived Plaintiff of the opportunity to cross-examine her accusers.

101. The foregoing actions committed by the Individual Defendants as employees of the University, were so outrageous, so extreme in degree, and went beyond all bounds of decency, such that they were utterly intolerable.

102. The actions of the Individual Defendants in their handling of the cases involving Plaintiff indicate either an intention to cause emotional distress to Plaintiff, or a reckless indifference to the high likelihood that such actions would cause severe emotional distress to Plaintiff, and such actions did directly cause severe emotional distress.

103. In combination with conduct described above, the Defendants' actions evinced a malicious and corrupt intent and a pattern of extreme and outrageous behavior pursued with the intent to cause Plaintiff to suffer severe emotional distress.

104. Defendants' conduct will continue to cause harm to Plaintiff given the irreparable harm to her reputation, the interruption in his education, and the lifelong consequences that flow therefrom.

105. As a direct and foreseeable consequence of the foregoing conduct, Plaintiff has suffered, and will continue to suffer considerable emotional and psychological harm.

### FIFTH CLAIM FOR RELIEF – VIOLATION OF STATE CONSTITUTION
### (Against Organizational Defendants)

106. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

107. UNC and the other Organizational Defendants are agents of the State of North Carolina and at all times relevant to this cause of action, Organizational Defendants and their employees, agents, officers and directors were acting within the course and scope of the authority, employment or agency conferred on them by their respective organizations. As such, all of the conduct alleged herein is attributable to the Organizational Defendants and thereby the State of North Carolina.

108. The foregoing acts, omissions, agreements, and concerted conduct of Defendants directly and foreseeably caused the deprivations of the rights guaranteed to the Plaintiff by the North Carolina Constitution, including, but not limited to the following:

109. Defendants' conduct deprived Plaintiff of the right to the fruits of her own labor in violation of Article I, Section 1;

110. Defendants' conduct denied Plaintiff the equal protection of the laws in violation of Article I, Section 19; and

111. Defendants' conduct violated Plaintiff's constitutional right not to be deprived of his liberties, privileges or property but by the law of the land, in violation of Article I, Section 19.

112. As a direct and foreseeable result of the foregoing violations of Plaintiff's constitutional rights, Plaintiff has suffered the harms and damages alleged above in an amount to be determined by a jury.

113. Plaintiff pleads this direct cause of action under the North Carolina Constitution in the alternative to Plaintiff's state-law claims should those causes of action be barred in whole or part or otherwise fail to provide a complete and adequate state law remedy for the wrongs committed by the Defendants and their agents and employees.

### SIXTH CLAIM FOR RELIEF – CIVIL CONSPIRACY
### (All Defendants)

114. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

115. Defendants at some point were all aware at some point of the baseless allegations against Plaintiff and despite that knowledge set out on a course of conduct designed to result in the dismissal of Plaintiff from her course of study the University of North Carolina at Chapel Hill.

116. This conspiracy has resulted in an injury to Plaintiff in an amount in excess of $25,000.

117. As a result of this civil conspiracy Defendants shall be jointly and severally liable for all damages therefrom.

## SEVENTH CLAIM FOR RELIEF – PUNITIVE DAMAGES
### (All Defendants)

118. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

119. Defendants intentionally, wantonly, with planning and intent set out upon plan to dismiss Plaintiff prior to investigating or determining facts.

120. Defendants then together intentionally, wantonly, with planning and intent set out to dismiss Plaintiff without regard to the truth of the allegations against her.

121. The actions of Defendants represent willful and wanton conduct with conscious and intentional disregard for Plaintiff and Defendants knew or should have known his conduct was reasonably likely to result in injury, damages, or other harm.

122. As a direct and proximate result of Defendants willful, wanton, reckless and intentional conduct as set forth here, Plaintiff suffered severe emotional distress and financial loss.

123. As a direct and proximate result of Defendants' willful, wanton, reckless and intentional conduct Plaintiff is entitled to recover punitive damages from Defendants.

**WHEREFORE**, Plaintiff Hannah M. Balicki prays the Court as follows:

124. That the Plaintiff have and recover of Defendants a sum in excess of Twenty-Five Thousand Dollars ($25,000.00);

125. An Order allowing Plaintiff to reenroll and complete her degree program;

126. That the Plaintiff have and recover of Defendants, for punitive damages, a sum in excess or Twenty-Five Thousand Dollars ($25,000.00);

127. That Plaintiff have and recover of Defendants, interest at the legal rate on any judgment from the date of the institution of this action, as provided by N.C.G.S. §§ 24-1 and 24-5;

128. That the costs of this action be taxed against the Defendants including reasonable attorneys' fees;

129. That all issue of fact be tried by a jury; and

130. For such and other relief as the Court deems just and proper.

This is the 30th day of April, 2025.

/s/ Matthew C. Suczynski
Matthew C. Suczynski
Attorney for Plaintiff
Law Office of Matthew Charles Suczynski, PLLC
208 North Columbia Street
Chapel Hill, NC 27514
T: (919) 619-3242
F: (919) 869-2036
matt@matthewcharleslaw.com

## VERIFICATION

I, Hannah M. Balicki, first being duly sworn deposes and says that she is the Plaintiff named in the foregoing action; that she has read the foregoing instrument and knows the contents thereof and that the same is true of her own knowledge except as to those matters and things therein alleged upon information and belief and as to those, she believes to be true.

_Hannah M. Balicki_
Hannah M. Balicki, Plaintiff

SWORN TO and SUBSCRIBED before me
This the 29th day of April, 2025.

_Taylor Braund 4-29-25_
Notary Public: Taylor Braund

My commission expires: May 2nd, 2031

1