IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 25-CV-00424

| | |
|---|---|
| HANNAH M. BALICKI, | |
| Plaintiff, | |
| v. | MEMORANDUM IN SUPPORT |
| | OF DEFENDANT |
| THE UNIVERSITY OF NORTH | HEIDI WESCHLER'S |
| CAROLINA AT CHAPEL HILL, | MOTION FOR JUDGMENT |
| UNIVERSITY OF NORTH CAROLINA | ON THE PLEADINGS |
| SCHOOL OF MEDICINE, UNIVERSITY | PURSUANT TO RULE 12(c) |
| OF NORTH CAROLINA HOSPITALS AT | OF THE NORTH CAROLINA RULES |
| CHAPEL HILL, UNIVERSITY OF | OF CIVIL PROCEDURE |
| NORTH CAROLINA HEALTH CARE | |
| SYSTEM, KATIE HANLON, HEIDI | |
| WESCHLER, | |
| Defendants | |

## INTRODUCTION

On July 6, 2023, Plaintiff, without authorization, "accessed [her professor's] medical records" for the purpose of determining whether her professor ("the Professor") was at the University of North Carolina's hospital giving birth. (ECF No. 5 ¶ 16). After confirming she was, Plaintiff sent the Professor a text message "thanking [her] for [her] support and sending [her] god [sic] wishes for [the] delivery." (Id.). The Professor, suspicious of the text message's timing, reported Plaintiff's conduct to the UNC School of Medicine's Physician's Assistant Studies Program ("the Academic Program") in which Plaintiff was enrolled.

Throughout the ensuing investigation by the UNC Health Privacy Office, and during the appeal of the UNC School of Medicine's decision to expel her from the Academic Program, Plaintiff repeatedly admitted that she accessed the Professor's medical records. (ECF No. 5-

1

1 at 2; ECF No. 5-4 at 1).[1] Plaintiff never argued that she had authorization to view these records. (See generally ECF Nos. 5, 5-1, 5-4, 5-5, 5-8, 5-9). On the contrary—the Professor told investigators that she "did not give permission for this access and would not have condoned such an invasion of her privacy." (ECF No. 5-5 at 2).

Conceding that she violated 42 U.S.C. § 1320d-6(a)(2) and 45 C.F.R. § 164. 502 et seq. (ECF No. 5 ¶ 16; see generally ECF Nos. 5-1, 5-4, 5-5, 5-8, 5-9), Plaintiff argues that Heidi Weschler, who conducted the investigation on behalf of the UNC Health Privacy Office, nevertheless violated her Fourteenth Amendment right to procedural due process by purportedly denying Plaintiff notice of her alleged misconduct and an opportunity to be heard. (ECF No. 5 ¶ 68). Plaintiff makes this argument even though: (1) Plaintiff admitted to, and never disputed, the misconduct of which she was accused, and (2) Ms. Weschler had no role in the hearing process or the decision to dismiss Plaintiff from the Academic Program. (ECF Nos. 5-1, 5-3, 5-5, 5-8).

Plaintiff asserted several claims against Ms. Weschler and the other defendants. As for the claims against Ms. Weschler, Plaintiff attempts to assert a claim under 42 U.S.C § 1983, and claims for negligent infliction of emotional distress, intentional infliction of emotional distress, civil conspiracy, and punitive damages. As set forth below, dismissal of all claims against Ms. Weschler is appropriate here because Plaintiff's Complaint fails to

---

[1] "Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, . . . the court can consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting a motion to dismiss into one for summary judgment." Hirtenstein v. Cempra, Inc., 348 F. Supp. 3d 530, 549 (M.D.N.C. 2018), aff'd sub nom. Janies v. Cempra, Inc., 816 F. App'x 747 (4th Cir. 2020) (citations and quotation marks omitted); Dillard v. Thomasville Auto Sales, LLC, 221 F. Supp. 3d 677, 681 (M.D.N.C. 2016) (applying same standard on a Rule 12(c)); see Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (finding that courts may consider the pleadings, matters of public records, "as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic").

allege a procedural due process claim against Ms. Weschler, and because her Complaint demonstrates that only she is to blame for her expulsion and the alleged consequences stemming therefrom.

**FACTS AS ALLEGED BY PLAINTIFF**

Plaintiff commenced this case against four organizational defendants: (1) the University of North Carolina at Chapel Hill ("UNC-CH"), (2) the University of North Carolina School of Medicine ("UNC School of Medicine"), (3) University of North Carolina Hospitals at Chapel Hill ("UNC Hospitals"), and (4) University of North Carolina Health Care System ("UNC Health"). (ECF No. 5). Each of these corporate defendants is distinct from the other.

UNC Health "is an integrated health care system owned by the State of North Carolina." (ECF No. 5 ¶ 5). "The UNC School of Medicine collaborates with clinical sites," such as UNC Health, "as a measure to educate their students[.]" (ECF No. 5-7 at 6). "Clinics, like UNC Health, may reconsider their willingness to collaborate with the UNC School of Medicine if they [find] students [do] not take privacy and confidentiality policies seriously." (Id.). Accordingly, as a student in the Academic Program, Plaintiff was "bound by the policies of both UNC-CH and UNC Health." (Id.).

In July 2023, Plaintiff was a student in the Academic Program. (ECF No. 5 ¶ 11). While enrolled in the Academic Program, Plaintiff "work[ed] as a representative of the university [at] UNC Health," a clinical site, "under the supervision of the UNC School of Medicine." (ECF No. 5-7 at 6).

Plaintiff "had many professors[,] including [the Professor,] who was pregnant and due to give birth in July 2023." (ECF No. 5 ¶ 12). On July 5, 2023, the Professor told Plaintiff that she was scheduled to be induced on July 6, 2023. (Id. ¶ 14). On July 6, 2023, a "fellow student" texted Plaintiff that the Professor "was present in the hospital for her scheduled delivery." (ECF No. 5-1 at 1; ECF No. 5 ¶ 15). Plaintiff thereafter "accessed [the Professor's] medical

3

records briefly to confirm [her] presence at the hospital for her scheduled delivery, prior to sending a message to [the Professor] thanking [her] for [her] support and sending [her] god [sic] wishes for a delivery that was previously discussed." (Id. ¶ 16).

After giving birth to her child, the Professor alerted Katie Hanlon, the Academic Program's director, that she had received a text message from Plaintiff "soon after arriving at the Women's Health Clinic." (ECF No. 5-7 at 7; ECF No. 5 ¶ 18). On or about July 7, 2023, Ms. Hanlon "initiated an investigation" with the UNC Health Privacy Office. (ECF No. 5 ¶ 19).

Ms. Weschler, in her role as Privacy Program Manager at UNC Health—an entity separate from the UNC School of Medicine and UNC-CH—conducted the investigation. (Id. ¶¶ 8, 20).

As part of the investigative process, Ms. Weschler interviewed Plaintiff on or about August 14, 2023. (Id. ¶ 24; ECF No. 5-4 at 26). Ms. Weschler started the discussion by asking Plaintiff about the "text [Plaintiff] had received from a fellow student identifying [the Professor's] presence . . . in the hospital on the morning of July 6, 2023." (ECF No. 5-1 at 1). Ms. Weschler then showed Plaintiff "a report [indicating] that [Plaintiff had] access[ed] [the Professor]'s medical record from 9:47am to 9:52am on July 6, 2023." (Id.). At first, Plaintiff told Ms. Weschler this must have been an "accident." (Id. at 2). Then Plaintiff and Ms. Weschler discussed that "more likely the text message from [Plaintiff's] colleague is what prompted her access which was immediately before her text to [the Professor] in the middle of her private treatment encounter as a patient." (Id.). Plaintiff admitted that she access the Professor's medical records. (ECF No. 5 ¶ 16).

On August 16, 2023, Ms. Weschler sent a memorandum to Ms. Hanlon summarizing her investigation. (See generally ECF No. 5-1). Ms. Weschler explained that Plaintiff "intentionally accessed PHI without a business need to know and for reasons not related to

4

treatment, payment or health care operations." (Id. at 3). Plaintiff admits the accuracy of this finding in her own Complaint. (ECF No. 5 ¶ 16). Ms. Weschler thus recommended that Plaintiff "receive corrective action appropriate for a Level III violation." (ECF No. 5-1 at 3). Plaintiff was also given a copy of this memorandum, and prepared a written response to it. (See id. at 1).

On or about August 28, 2023, Plaintiff was heard before the UNC School of Medicine's Academic Excellence Committee (the "Academic Excellence Committee"). (See generally id.). The Academic Excellence Committee explained that it had made "the decision . . . to dismiss [Plaintiff] from the [P]rogram." (Id. at 1). In reaching that decision, the Academic Excellence Committee reviewed "information presented at the meeting with the [UNC Health] Privacy Office on August 14, 2023," Ms. Weschler's memorandum, and Plaintiff's "written response" thereto. (Id.). The Academic Excellence Committee explained that Plaintiff had the "right to appeal this decision," and directed Plaintiff to commence any appeal within 20 days. (Id.). The Academic Excellence Committee further indicated that any appeal must identify "the specific grounds and all the supporting facts upon which the appeal is based." (Id. at 2).

On or about September 9, 2023, Plaintiff commenced an appeal on four grounds. First—although Plaintiff admits she viewed records sufficient to allow her to determine that the Professor was in the hospital giving birth to her child (ECF No. 5 ¶ 16)—Plaintiff argued that the Academic Program "failed to [identify the] records [Plaintiff] accessed" at the time of the incident in question. (ECF No. 5-4 at 2).

Second—although Plaintiff discussed the text message she received from her "fellow student" and admitted to accessing the Professor's medical records during her interview with Ms. Weschler (ECF No. 5-1 at 1)—Plaintiff argued that she was deprived of due process because Ms. Weschler denied her the "opportunity to review [the] evidence against her," including "statements made in the investigation process." (ECF No. 5-4 at 3).

5

Third—although Plaintiff was provided with a copy of Ms. Weschler's memorandum before her hearing with the Academic Excellence Committee (ECF No. 5-3 at 1), submitted a written response to that memorandum (id.), was heard by the Academic Excellence Committee on the allegations contained in that memorandum (id.), and admitted during that hearing that she "accessed the [Professor's] record to see what was happening with the [Professor] because [Plaintiff] wanted to text her well wishes" (ECF No. 5-5 at 3)—Plaintiff argued she was denied both notice and an opportunity to be heard in violation of § 700.4.1 of the University of North Carolina's Policy Manual. (ECF No. 5-4 at 3–5).

Lastly, Plaintiff argued that her sanction—expulsion—was too severe. (Id. at 5).

On December 13, 2023, the UNC School of Medicine's Department of Health Sciences Academic Affairs Committee's Subcommittee on Appeals (the "Appeals Subcommittee") denied Plaintiff's appeal. (ECF No. 5-5). First, the Appeals Subcommittee explained that Plaintiff admitted to accessing the Professor's medical record. (Id. at 2). Second, the Appeals Subcommittee indicated that Plaintiff had been "informed about the inquiry into [her] alleged violation of [P]rogram [standards] and that, if [she] were found responsible, [she] could be dismissed from the [Academic Program]." (Id.). Third, the Appeals Subcommittee explained that § 700.4.1 was inapplicable to Plaintiff's proceeding because that policy applies only to proceedings under "the University's Instrument of Student Judicial Governance." (Id.) (emphasis in original). Lastly, the Appeals Subcommittee indicated that expulsion was appropriate because checking the Professor's records to "see what was happening . . . [and] text her well wishes" was not an acceptable reason for viewing a patient's medical records. (Id. at 3); also see 45 C.F.R. § 164.502.

## ARGUMENT

Dismissal is proper under Rule12(c) where a plaintiff fails to plead a short and plain statement of the claim showing the pleader is entitled to relief. Republican Party v. Martin,

980 F.2d 943, 952 (4th Cir.1992).[2] Under this rule, "a plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face,' as opposed to merely conceivable on some undisclosed set of facts." Vazquez v. Waln, No. 1:10CV751, 2011 WL 7301568, at *2 (M.D.N.C. Nov. 28, 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)), report and recommendation adopted, No. 1:10CV751, 2012 WL 482014 (M.D.N.C. Feb. 14, 2012). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Dismissal of all claims is appropriate here. Plaintiff's section 1983 procedural due process claim is subject to dismissal because: (1) Plaintiff fails to allege that Ms. Weschler's alleged conduct represented the "execution of a government's policy or custom"[3]; (2) Plaintiff cannot show she is entitled to Fourteenth Amendment due process protections in continued enrollment, or to her good name or reputation; (3) even assuming arguendo that Plaintiff had constitutionally protected interest, Plaintiff cannot demonstrate that she was deprived of those interests without procedural due process in this case; and (4) even if Plaintiff had stated a section 1983 claim, Ms. Weschler is entitled to qualified immunity.

Plaintiff's claim for intentional infliction of emotional distress because she fails to allege Ms. Weschler engaged in extreme and outrageous conduct that "'exceeds all bounds

---

[2] "A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). Accordingly, citations throughout this memorandum to orders decided on Rule 12(b)(6) motions will be applicable to the motion on the pleadings sub judice.

[3] Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (quotation marks omitted).

usually tolerated by decent society.'"[4] Plaintiff's claim for negligent infliction of emotional distress also fails because Plaintiff fails to identify any negligence on behalf of Ms. Weschler. Both of these claims also fail because Plaintiff does not allege that she has been diagnosed with a severe mental condition recognized or diagnosed by medical professionals.

Finally, Plaintiff fails to state a claim for civil conspiracy because she does not plausibly allege that there was an agreement between Ms. Weschler and any other person to do a wrongful act.

## I. PLAINTIFF FAILS TO STATE ANY CLAIM UNDER 42 U.S.C. § 1983 AGAINST MS. WESCHLER.

Plaintiff's official capacity claims asserted against Ms. Weschler pursuant to section 1983 should be dismissed because Plaintiff failed to allege that Ms. Weschler acted pursuant to any official custom or policy. Furthermore, Ms. Weschler is entitled to qualified immunity on Plaintiff's individual capacity claims for the conduct described in Plaintiff's Complaint. But even if qualified immunity did not apply, Plaintiff failed to state a claim under section 1983 against Ms. Weschler upon which relief can be granted.

### A. Plaintiff's section 1983 claims against Ms. Weschler in her official capacity should be dismissed because Plaintiff failed to allege that Ms. Weschler executed an official government policy.

To the extent Plaintiff asserts section 1983 claims against Ms. Weschler in her official capacity, those claims should be dismissed. Under section 1983, official-capacity liability occurs only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Relevant here, "'an official's discretionary acts, exercised in carrying out official

---

[4] Dickens v. Puryear, 302 N.C. 437, 447, 276 S.E.2d 325, 331 (1981).

8

duties, do not necessarily represent official policy.'" Richardson v. Taylor, No. 1:19CV352, 2020 WL 2736716, at *4 (M.D.N.C. May 26, 2020), report and recommendation adopted, No. 1:19CV352, 2020 WL 4938346 (M.D.N.C. Aug. 24, 2020) (citations omitted). "'[R]ather, the official must have 'final authority' over government policy with respect to the action in question to trigger official capacity liability.'" Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481–82 (1986)).

In this case, Plaintiff does not allege that Ms. Weschler acted pursuant to any official custom or policy of UNC Health. (See generally ECF No. 5). Similarly, Plaintiff does not allege that Ms. Weschler possessed "final authority" over any such custom or policy. Richardson, 2020 WL 2736716, at *5. For these reasons, Ms. Weschler respectfully requests that Plaintiff's official-capacity claims, if any, be dismissed.

> **B.** **Plaintiff's section 1983 claim against Ms. Weschler in her individual capacity should be dismissed because it is barred by qualified immunity and, in any case, Plaintiff was afforded due process.**

Plaintiff's section 1983 claim against Ms. Weschler rests on a conclusory allegation that she "knowingly violated Plaintiff's clearly established rights to notice, a meaningful opportunity to be heard, and the right to cross-examine witnesses." (ECF No. 5 ¶ 69). However, to state a procedural due process claim under section 1983, Plaintiff must show: (1) a constitutionally protected interest, (2) that she was deprived of that interest by state action, and (3) that the procedures employed were inadequate. Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013). Plaintiff cannot meet this burden—and even if she could, her claim is barred by qualified immunity.

> 1. Qualified immunity bars Plaintiff's section 1983 claim against Ms. Weschler in her individual capacity because there was no violation of a clearly established right.

Issues of immunity should be decided "at the earliest possible stage" of litigation. Hunter v. Bryant, 402 U.S. 224, 227 (1991). Qualified immunity exists to protect public

9

officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity applies unless: (1) "the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009); Doe v. Univ. of N.C. Sys., 133 F.4th 305, 315 (4th Cir. 2025) (stating that, to satisfy the second prong of this analysis, the existence of the asserted right in question "must have been beyond debate" at the time of the alleged violation (emphasis added; citation and quotation marks omitted)). If a plaintiff fails to establish either of these two factors, qualified immunity is triggered and the claim must be dismissed. See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016).

Plaintiff cannot demonstrate the existence of a constitutionally protected interest in her continued enrollment. Significantly, the Fourth Circuit has never held there to be a constitutionally protected interest in college university enrollment. While it has "assumed, without actually deciding, that university students possess a constitutionally protectible property right in their continued enrollment in a university" in Doe v. University of North Carolina System, 133 F.4th at 318 (citations and quotation marks omitted), the Fourth Circuit has never determined that "a student possessed a liberty interest implicated by a university disciplinary action." Id. (citations omitted).

Absent constitutional protection, for a property interest to be subject to procedural due process protections, it must be "created and defined by a source independent of the Constitution, such as state law." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1141 (4th Cir. 1990) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). Plaintiff, a citizen of Michigan (ECF No. 5 ¶ 1), identifies no North Carolina law that gives her a property

10

interest in her enrollment at the University of North Carolina. (See generally id.). Nor can Plaintiff argue that the University of North Carolina's policies and procedures created a protected property interest. Sheppard v. Visitors of Virginia State Univ., 993 F.3d 230, 239 (4th Cir. 2021) ("[M]ere [v]iolations of . . . school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claim." (citations and quotation marks omitted; second and third alteration in original)).

Furthermore, Plaintiff cannot show the existence of a constitutionally protected interest in her good name and reputation. The Fourth Circuit has "plainly and repeatedly recognized that an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest. Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002). Whether such an interest exists is decided based on the stigma-plus test. Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 309 n.16 (4th Cir. 2006). To satisfy this test, a stigmatizing statement must be made public such that it damages the plaintiff's reputation. Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). And the reputational injury must be "accompanied by a state action that 'distinctly altered or extinguished' [the plaintiff's] legal status." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012) (citations omitted).

Plaintiff's Complaint fails this test. Nowhere does Plaintiff allege that any stigmatizing statement made by Ms. Weschler was made public, or that any such remarks are likely to ever be made public. Cf. Cannon v. Vill. of Bald Head Island, 891 F.3d 489, 503 (4th Cir. 2018) (holding that defendants implicated plaintiff's reputational liberty interests by "sending the Officers' termination letters to the news media and sending the email to all full-time Bald Head employees . . . stating that the Officers were terminated for 'harassment,' 'sexual harassment,' and 'detrimental personal conduct.'"). Even if Ms. Weschler's remarks were made public, Plaintiff's status as a student in the Academic Program is not a legal status

subject to constitutional protections. See, e.g., Doe v. Va. Polytechnic Inst. & State Univ., 617 F. Supp. 3d 412, 429 (W.D. Va. 2022) ("Without a statutory right to be a public college or university student, Doe cannot show that his status under state law was altered or extinguished.").

Finally, Plaintiff claims that Ms. Weschler violated her rights by denying her the opportunity to cross examine her accuser. (ECF No. 5 ¶¶ 26, 69). However, during the investigation, hearing, and appeal, Plaintiff admitted to the underlying conduct—that she accessed the Professor's protected health information for no legitimate basis other than to see what was happening with the Professor so as to send well wishes. (ECF No. 5-1 at 2; ECF No. 5-4 at 1). The underlying conduct was never in dispute; in fact, Plaintiff admitted to the conduct. Furthermore, at the time of the conduct underlying Plaintiff's Complaint, the Fourth Circuit had never held that cross examination was required in the context of a privacy office investigation. See Doe v. Univ. of N.C. Sys., 133 F.4th at 317 (holding for the first time that, "[g]oing forward," students facing expulsion under Title IX have a right to cross examine their accuser).

Accordingly, for the foregoing reasons, Ms. Weschler is entitled to qualified immunity on Plaintiff's section 1983 claims.

   2.   Regardless of qualified immunity, Ms. Weschler provided Plaintiff sufficient due process.

Even if Plaintiff had adequately alleged the existence of a protected interest, and if qualified immunity did not apply to Plaintiff's claim against Ms. Weschler in her individual capacity, her claim still fails because: (1) Ms. Weschler provided Plaintiff adequate notice and, (2) in her capacity as an investigator employed by UNC Health, was not the individual responsible for Plaintiff's expulsion from the Academic Program or for providing Plaintiff an opportunity to be heard before an impartial decision maker.

12

Plaintiff claims Ms. Weschler failed to provide Plaintiff adequate due process because she failed to provide Plaintiff constitutionally sufficient notice by declining to provide a copy of the audit trail for the Professor's medical record, and to permit Plaintiff to cross examine her accuser. (ECF No. 5 ¶¶ 26, 69). But due process requires neither.

Due process requires notice and the opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 348 (1976). This is a flexible inquiry. Id. Constitutionally adequate notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Todman v. Mayor & City Council of Baltimore, 104 F.4th 479, 488 (4th Cir. 2024) (citations omitted). In the context of student disciplinary proceedings at the time the events at issue took place, the Fourth Circuit has found that a trial-like proceeding with cross examination is not required. Butler v. Rector & Bd. of Visitors of Coll. of William & Mary, 121 F. App'x 515, 520 (4th Cir. 2005); cf. Doe, 133 F.4th at 317.

In this case, Ms. Weschler notified Plaintiff that UNC Health Privacy Office had learned that "Plaintiff had accessed [the Professor's] medical records from 9:47 a.m. to 9:52 a.m." (ECF No. 5 ¶ 25). Although Ms. Weschler did not print a physical copy of the Professor's medical record audit trail, she allowed Plaintiff to "view a report which showed [Plaintiff's] access of [the Professor's] medical record[.]" (ECF No. 5-1 at 2). Such notice was constitutionally adequate, as it provided enough information for Plaintiff to admit that she had accessed the Professor's medical records. (ECF No. 5 ¶ 16; ECF No. 5-1 at 1-2; ECF No. 5-5 at 3).

Plaintiff asserts that, despite admitting to the underlying conduct, Ms. Welscher should have provided her with an opportunity to cross examine the Professor. (ECF No. 5 ¶¶ 26, 69). But Plaintiff does not allege in her Complaint or through her exhibits that Ms. Weschler, an investigator with the UNC Health Privacy Office, had any role in Plaintiff's

13

disciplinary proceedings at the UNC School of Medicine. (See generally ECF Nos. 5, 5-1, 5-3, 5-5, 5-8). Nor can she make such allegations. As the pleadings before the Court show:

- UNC Health, via Ms. Weschler, handled the initial investigation, (ECF No. 5 ¶¶ 20, 24, 28, 29; ECF No. 5-1);

- Then, the UNC School of Medicine, via the Academic Excellence Committee and later the Appeals Subcommittee, handled Plaintiff's hearing and appeal, in which Ms. Weschler had no role, and ultimately decided to remove her from the Academic Program, (ECF No. 5 ¶¶ 31–34; ECF No. 5-3; ECF No. 5-5).

Furthermore, Plaintiff's actions were not in dispute, (ECF No. 5-1 at 2; ECF No. 5-4 at 1), and, at the time of the actions underlying Plaintiff's Complaint, she had no right to cross examination in this context. Doe, 133 F.4th at 317; see also Doe v. Virginia Polytechnic Inst. & State Univ., 77 F.4th 231, 237 (4th Cir. 2023) (explaining that investigations, standing alone, do not implicate due process rights because they "merely describe[] the evidence against [the student.]").

For these reasons, Plaintiff failed to state a claim against Ms. Weschler under section 1983 upon which relief can be granted.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL AND/OR NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff alleges Ms. Weschler caused intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") by conducting an investigation during which Plaintiff admitted to engaging in misconduct. (ECF No. 5 ¶¶ 90–105). But Plaintiff cannot shield herself from the consequences of her own actions. As discussed in greater detail below, Plaintiff fails to state a claim for either intentional or negligent infliction of emotional distress because she (1) fails to allege that Ms. Weschler

engaged in conduct that "exceeds all bounds usually tolerated by decent society,"[5] (2) fails to allege that Ms. Weschler committed a negligent act, and (3) and fails to sufficiently allege an emotional distress, as required by both claims.

### A. Plaintiff's IIED claim should be dismissed because she does not allege extreme and outrageous conduct.

"To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress to another." <u>Moschos v. Moschos</u>, 287 N.C. App. 162, 166, 882 S.E.2d 401, 404 (2022) (citation and quotation marks omitted). "Extreme and outrageous conduct is defined as conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> (citations and quotation marks omitted).

North Carolina appellate courts have established "a high threshold for finding that conduct meets the standard." <u>Norton v. Scotland Mem'l Hosp., Inc.</u>, 250 N.C. App. 392, 398, 793 S.E.2d 703, 708 (2016) (citation and quotation marks omitted). To meet this threshold, a complaint must set forth allegations detailing "atrocious and utterly intolerable acts" that would be sufficient to "support a claim of punitive damages." <u>Hensley v. Suttles</u>, 167 F. Supp. 3d 753, 768 (W.D.N.C. 2016), <u>aff'd sub nom.</u> <u>Hensley on behalf of N.C. v. Price</u>, 876 F.3d 573 (4th Cir. 2017); <u>see, e.g.</u>, <u>Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 651 (M.D.N.C. 2004) (allegations that defendant refused to provide medical services to a woman despite knowing it would likely lead to her untimely death, resulting in the woman's premature death, met this threshold); <u>Turner v. Thomas</u>, 369 N.C. 419, 428, 794

---

[5] <u>Dickens</u>, 302 N.C. at 447, 276 S.E.2d at 331 (citations omitted).

15

S.E.2d 439, 446 (2016) (allegations that law enforcement officers "deliberately abus[ed] their authority as public officials to manipulate evidence and distort a case" met this threshold).

Here, Plaintiff alleges merely Ms. Weschler conducted the investigation into Plaintiff's actions on behalf of UNC's privacy office and that, as part of this investigation, Ms. Weschler met with Plaintiff, at which time Plaintiff admitted to accessing the protected health information; prepared a written report; and, based on Plaintiff's admissions, made recommendations for possible sanctions. (ECF No. 5 ¶¶ 20, 24, 27, 29; ECF No. 5-1 at 1–3). These allegations do not detail "atrocious and utterly intolerable acts"—rather, they depict an employee doing her job. See, e.g., Piro v. McKeever, 245 N.C. App. 412, 417–19, 782 S.E.2d 367, 371–73 (dismissing IIED claim where the defendant's conduct consisted of performing her duty as a licensed clinical social worker in conducting forensic interview of plaintiff's child), aff'd, 369 N.C. 291, 794 S.E.2d 501 (2016); see also Stephenson v. Carolina Physicians Network Inc., No. 3:21-CV-103-FDW-DCK, 2021 WL 4558198, at *4 (W.D.N.C. Oct. 5, 2021) ("Plaintiff's allegations merely suggest of workplace disagreements, internal investigations, disciplinary actions, and directions with and from her supervisors—things that occur in every job and in every workplace.").

Because Plaintiff does not allege extreme or outrageous conduct, her IIED claim should be dismissed.

### B. Plaintiff's NIED claim should be dismissed because she does not identify a negligent act.

To state a claim for NIED a plaintiff must show that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." Cauley v. Bean, 282 N.C. App. 443, 445, 871 S.E.2d 870, 873 (2022) (citation and quotation marks omitted). "Included within these elements is a requirement

16

that the defendant have committed negligence, including the failure to exercise due care in the performance of some legal duty owed to plaintiff." Sheaffer v. Cnty. of Chatham, 337 F. Supp. 2d 709, 733–34 (M.D.N.C. 2004) (citation and quotation marks omitted). Underlying intentional tortious conduct cannot support an NIED claim. Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000).

In this case, Plaintiff only alleges intentional conduct with respect to Ms. Weschler. (ECF No. 5 ¶¶ 20, 24–29).[6] To wit, she asserts that Ms. Weschler "knowingly violated Plaintiff's clearly established rights." (Id. ¶¶ 69–70 (emphasis added)). Furthermore, "Plaintiff's complaint makes no reference to any duty that [Ms. Weschler] owed her." Sheaffer, 337 F. Supp. 2d at 734. Instead, Plaintiff baldly asserts that Ms. Weschler "carried out [her] duties with respect to the cases against Plaintiff in a negligent manner." (ECF No. 5 ¶¶ 91–92). Such conclusory allegations are insufficient to state a plausible claim for NIED, Iqbal, 556 U.S. at 678, particularly where Plaintiff's Complaint reveals that Plaintiff admitted to Ms. Weschler that she accessed the Professor's medical records without authorization. (ECF No. 1 ¶ 6; ECF No. 5-1 at 1-2); see, e.g., Sheaffer, 337 F. Supp. 2d at 734 ("Aside from a single conclusory allegation, Plaintiff's complaint recounts only intentional acts by Defendants.").

Because the "allegations in this case charge nothing but intentional acts by Defendant[,] . . . Plaintiff fails to state a claim for negligent infliction of emotional distress." Thomas, 157 F. Supp. 2d at 637. Her claim should therefore be dismissed. Id.; Sheaffer, 337 F. Supp. 2d at 734; see also Stephenson, 2021 WL 4558198, at *5.

---

[6] Plaintiff's additional claims against Ms. Weschler—section 1983, IIED, and civil conspiracy, (ECF No. 5 at 6, 15, 17)—do not save her NIED claim. Rather, "taking all these allegations as true, they demonstrate intentional acts for which Plaintiff has made other claims; they do not show negligent acts required for a claim of negligent infliction of emotional distress." Sheaffer, 337 F. Supp. 2d at 734.

17

### C. Plaintiff's NIED and IIED claims should be dismissed because she does not allege severe emotional distress.

To survive a motion to dismiss, a plaintiff alleging NIED and/or IIED under North Carolina law must identify "a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Moschos, 287 N.C. App. at 166, 882 S.E.2d at 404; Pardasani v. Rack Room Shoes Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996) (same); see also Waddle v. Sparks, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (adopting same standard for both NIED and IIED claims). "[W]ithout any factual allegations, regarding the type, manner, or degree of severe emotional distress she claims to have experienced," a plaintiff "fails to state a valid claim." Cauley, 282 N.C. App. at 451, 871 S.E.2d at 876 (citation and quotation marks omitted).

Plaintiff alleges, in conclusory fashion, that she has suffered an undefined "emotional distress" as a result of Ms. Weschler's actions. (See ECF No. 5 ¶¶ 88, 93, 94, 96, 97, 102, 103, 105). Plaintiff does not provide any facts regarding the nature of her alleged emotional distress. (See generally id.). These conclusory allegations are not sufficient to state a claim. Iqbal, 556 U.S. at 678; see, e.g., Cauley, 282 N.C. App. at 451, 871 S.E.2d at 876 (affirming dismissal where plaintiff only alleged having suffered "emotional distress" and "severe emotional distress"); Horne v. Cumberland Cnty. Hosp. Sys., Inc., 228 N.C. App. 142, 149, 746 S.E.2d 13, 20 (2013) (same).

Nor do Plaintiff's allegations that she suffered "psychological harm" (ECF No. 5 ¶¶ 96, 97, 105), suffice, because they do not provide any information as to the "type, manner, or degree of severe emotional distress she claims to have experienced." Cauley, 282 N.C. App. at 451, 871 S.E.2d at 876; see, e.g., Moschos, 287 N.C. App. at 166–67, 882 S.E.2d at 404 (affirming dismissal where plaintiff alleged he was "stunned," "utterly distraught," and had

18

to undergo "psychological treatment"); <u>Pardasani</u>, 912 F. Supp. at 192 (dismissing claim where plaintiff alleged "physical distress and the need for medical attention").

For these additional reasons, Plaintiff's claims for NIED and IIED should be dismissed.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY BECAUSE SHE DOES NOT ALLEGE THAT THERE WAS AN AGREEMENT BETWEEN MS. WESCHLER AND ANYONE ELSE.

Plaintiff asserts a claim for civil conspiracy against Ms. Weschler, but fails to allege that there was any agreement between Ms. Weschler and any other person to commit any unlawful act. For this reason, and because North Carolina law does not recognize a freestanding claim for civil conspiracy, this claim is subject to dismissal.

"A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy must be the showing that a conspiracy in fact existed." <u>S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC</u>, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (citation omitted). To meet this threshold, Plaintiff must allege the existence of an agreement between two or more individuals. <u>Id.</u>

Here, while Plaintiff's Complaint includes the terms "conspiracy" and "civil conspiracy," (ECF No. 5 ¶¶ 116–17), it contains no allegations as to an agreement between Ms. Weschler and anyone else to commit any wrongdoing. <u>See, e.g.</u>, <u>S.N.R.</u>, 189 N.C. App. at 609, 659 S.E.2d at 449 ("In the complaint, plaintiff asserted the existence of a conspiracy, yet plaintiff failed to allege that there was an agreement between the defendants . . . ."). Plaintiff's conclusory statements, without more, do not save Plaintiff's claim. <u>Iqbal</u>, 556 U.S. at 678. Accordingly, because Plaintiff fails to allege that Ms. Weschler entered an agreement to commit wrongdoing against her, Plaintiff fails to state a civil conspiracy claim. <u>S.N.R.</u>, 189 N.C. App. at 609, 659 S.E.2d at 449 (failure to allege existence of agreement warranted the

trial court's dismissal of conspiracy claim); <u>Dove v. Harvey</u>, 168 N.C. App. 687, 691, 608 S.E.2d 798, 801 (2005) (same).

North Carolina law does not recognize an independent action for civil conspiracy, <u>Fox v. City of Greensboro</u>, 279 N.C. App. 301, 321 (2021), and, as argued <u>supra</u>, all of Plaintiff's other claims should be dismissed. Plaintiff's civil conspiracy claim also fails for lack of an underlying tort claim. <u>Krawiec v. Manly</u>, No. 15 CVS 1927, 2016 WL 374734, at *13 (N.C. Super. Ct. Jan. 22, 2016) ("[L]iability attaches only if one of the conspirators is liable for an underlying tort." (quotation marks omitted)), <u>aff'd as modified and remanded</u>, 370 N.C. 602 (2018).

For either of these reasons, Plaintiff's civil conspiracy claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Ms. Weschler respectfully requests that Plaintiff's Complaint be dismissed with prejudice.

This 14th day of August, 2025.

/s/Jeffrey S. Warren
Alex J. Hagan
N.C. Bar No. 19037
Jeffrey Warren
N.C. Bar No. 53652
Ellis & Winters LLP
P.O. Box 33550
Raleigh, NC 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
Alex.Hagan@elliswinters.com
Jeff.Warren@elliswinters.com

*Counsel for Defendant Heidi Weschler*

**CERTIFICATION**

Pursuant to Local Civil Rule 7.3(d)(1), the undersigned hereby certifies that this Memorandum does not exceed 6,250 words, excluding the caption, signature lines, and certificate of service.

/s/ Jeffrey S. Warren

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and I hereby certify that I have served the foregoing by electronic mail on the below-listed counsel who have not yet entered an appearance in this Court:

Matthew C. Suczynski
Law Office of Matthew Charles Suczynski, PLLC
208 North Columbia Street
Chapel Hill, NC 27514
matt@mattewcharleslaw.com

This the 14th day of August, 2025.

/s/ Jeffrey S. Warren
Jeffrey S. Warren